In re Kari R. ROBBINS, fka
Kari R. Varela, Debtor.

No. DG 10–01484.

United States Bankruptcy Court,
W.D. Michigan.

April 19, 2010.

Roger G. Cotner, Cotner Law Office, Grand Haven, MI, for Debtor.

## MEMORANDUM OF DECISION AND ORDER DENYING CONFIRMATION

SCOTT W. DALES, Bankruptcy Judge.

Debtor Kari R. Robbins (the "Debtor") seeks an order confirming her Chapter 13 Plan (the "Plan") over the oral objection of her Trustee, Brett N. Rodgers ("Trustee"). The court held a confirmation hearing on April 9, 2010 in Grand Rapids, Michigan, and after hearing the arguments of counsel, took the matter under advisement. This opinion sets forth the court's reasons for denying confirmation.

 The court has jurisdiction over the Debtor's bankruptcy case, and this confirmation hearing is a core proceeding in which the bankruptcy court is authorized to enter a final order. *See* 28 U.S.C. § 1334(a) and L.Civ.R. 83.2(a) (W.D.Mich.) (bestowing and referring jurisdiction); 28 U.S.C. § 157(b)(2)(L) (listing core proceedings). An order denying confirmation without dismissing the case, however, is not a final order. *Sparks v. HSBC Auto Finance,* 299 Fed.Appx. 499 (6th Cir.2008).

Neither the Trustee nor any creditor filed any formal objection to the Plan, but at the confirmation hearing the Trustee refused to recommend confirmation, arguing that the Plan is equivocal, infeasible and discriminatory given the treatment of

the Debtor's largest creditor, Sallie Mae.[1] The Plan puts all unsecured creditors, including Sallie Mae, in the same creditor class, but then proposes a different treatment for Sallie Mae, presumably because the claim is excepted from discharge under 11 U.S.C. § 523(a)(8).

On the one hand, the Plan provides that all unsecured creditors will receive a 100% dividend, but on the other hand, it also provides that Sallie Mae will receive a *pro rata* distribution with other unsecured creditors *and* payments after the Plan's repayment period ends. The notion that Sallie Mae's payment rights will continue is consistent with the nature of its claim as excepted from discharge under 11 U.S.C. § 523(a)(8), but inconsistent with the proposition that all unsecured creditors (of whom Sallie Mae is the largest) will receive a 100% dividend. The confusion arises from the following language in the Plan:

> Claims of [Sallie Mae] will be paid in full to be disbursed pro-rata with dividends to allowed general unsecured creditors until all unsecured creditors have been paid the base or percentage provided or the Plan has continued for 36 months, whichever provides the greater dividend to unsecured creditors. The Debtor will then pay any unpaid part of these non-dischargeable student loans directly to the creditor or its assign after completion of her plan.

*See* Plan at p. 6 (§ II.G.2.a). At the confirmation hearing, counsel for the Debtor and the Trustee agreed that the Sallie Mae claim is roughly $100,000.00 and that the claims of other unsecured creditors amount to roughly $3,400.00. The parties also agreed that over the life of the Plan, the Debtor would be paying approximately $7,000.00 to unsecured creditors (including Sallie Mae), after attorney and trustees fees, given the $161.00 bi-weekly payments she proposes to make over 36 months. Obviously, these amounts are not enough to pay Sallie Mae's $100,000.00 claim in full. Thus, the Trustee argues, the Plan is not feasible.

■ If the Plan's dividend were truly *pro rata*, Sallie Mae would receive about 96 percent of each month's plan payment, and the other unsecured creditors would receive roughly 4 percent. Given that the Debtor proposes to pay roughly $348.00 per month, Sallie Mae would receive 96% of that figure or $334.00 per month, and the other unsecured creditors would receive 4% or $14.00 per month. In 36 months, after taking administrative expenses into account, Sallie Mae would receive roughly $6,728.00 and the other unsecured creditors would receive only about $501.00—far less than the 100% dividend the Debtor's Plan promises.

Given these dollar amounts, it is impossible to apply the Plan literally. This leaves the court, and the Trustee, guessing about the Debtor's intent and how to administer the Plan payments, an obviously unacceptable situation.

From the Debtor's counsel's statements at the confirmation hearing, it appears that the Debtor intended that the Trustee

---

1. The Plan referred to the student loan creditor as "Sallie Mae." At the hearing, counsel apparently agreed that the Debtor's student loan debt is approximately $100,000.00. Sallie Mae did not file a Proof of Claim, but an entity known as "AES/PHEAA" filed Proof of Claim No. 3 in the amount of $100,720.92. The court assumes that this entity is Sallie Mae's successor in interest or servicer. The identity of the creditor is less important to this opinion than the fact that the debt is non-dischargeable under 11 U.S.C. § 523(a)(8). If the Debtor chooses to amend her Plan, she may consider amending the reference to Sallie Mae, if appropriate. For present purposes, the court will use the parties' moniker and shall refer to the student loan creditor as "Sallie Mae."

should pay the other unsecured creditors 100% during the 36 month plan period, and also make some unspecified payment to Sallie Mae, before the Debtor resumes making payments directly to Sallie Mae after 36 months. This is presumably in an effort to bring Sallie Mae's long-term debt within 11 U.S.C. § 1322(b)(5).[2] The Plan, however, does not provide for this, and given the anti-discrimination principle embodied in 11 U.S.C. § 1322(b)(1), the court would carefully scrutinize such a provision.[3]

Therefore, the court can say with confidence that the Plan, as drafted, is neither clear nor feasible. Under these circumstances, the court will not require the Trustee or the Debtor's creditors to speculate about its meaning. Because the court is not dismissing the case, Debtor's counsel should consult with the Trustee about options for addressing the claims of Sallie Mae and the other unsecured creditors, consistent with the Bankruptcy Code. Perhaps with careful drafting, the Debtor, who evidently intends to pay her non-Sallie Mae creditors in full, may avail herself of the benefits of 11 U.S.C. § 1322(b)(5), provided her amendment does not unfairly discriminate against any creditors. *See In re Harding*, 423 B.R. 568 (Bankr.S.D.Fla. 2010) (refusing to confirm plan that cures student loan default as long-term debt at expense of other unsecured creditors).

NOW, THEREFORE, IT IS HEREBY ORDERED that confirmation of the Debtor's Chapter 13 Plan (DN 2), as amended for the first amendment (DN 35), is DENIED without prejudice to plan amendment.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to Fed. R. Bankr.P. 9022 and LBR 5005–4 upon Roger Cotner, Esq., Elizabeth Clark, Esq., and the creditors listed on the matrix filed in this case.

IT IS SO ORDERED.

---

2. Under 11 U.S.C. § 1322(b)(5), a plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim ... on which the last payment is due after the date on which the final payment under the plan is due."

3. As presently drafted, the Plan as Debtor's counsel explained it arguably discriminates against Sallie Mae because Sallie Mae is an unsecured creditor who is receiving less than 100% of its claim during the 36–months in which the Plan is in effect. Whether the discrimination is "unfair" is a separate question which the court does not reach because, as noted below, the Plan, as presently drafted, does not say what the Debtor's counsel meant it to say.